*22
 
 By the Court.
 

 Did the written instruments under consideration contemplate possession of the premises in question prior to the expiration of the May-Stern lease?
 

 The trial court limited the testimony with great strictness in so far as proof of extraneous circumstances was concerned, but we think sufficient appears to disclose that the parties contemplated the earliest possession of the premises in question by the grantee in the deed practicable under all the circumstances, and that this purpose to secure said property, under all the surrounding facts, must have been known to the husband and agent of the plaintiff in error.
 

 The deed recites that the grantee assumes the obligations and receives the benefits of the May-Stern lease “and subject” to the stipulation of March 20, 1922, that any amount incurred in securing the possession of said premises from the May-Stern Company should be equally apportioned between grantor and grantee. If only the simple assumption of the lease and its benefits was in the minds of the parties, why was such a provision “subject” to the agreement to share the expenses óf securing possession of the premises from the May-Stern Company, unless it meant other than at the expiration of the term? The expense of eviction upon default by the May-Stern Company, or at the expiration of the term, would have been so slight as to have hardly been in the minds of the parties. Some other expense must have been contemplated. The construction of the deed must be most strongly against the grantor.
 

 The sequence of events leading up to the purchase
 
 *23
 
 of the property, the fact that the Hartley option had no reference to the. May-Stern lease, the physical situation of the property as disclosed by the photographs attached to the record, showing the work in progress in the immediate surroundings at the date of the deed, indicate that some other meaning of the word “possession” was in contemplation by the parties than that at the end of the lease. It was surely an earlier possession, and if it required the expenditure of money to secure it, then the expense was to be apportioned between grantor and grantee.
 

 The word “possession” has different shades of meaning in its legal significance, and among them is that of occupancy; and we think that the actual occupancy of these premises at the earliest date practicable is the meaning to be attached, to the word as used in the option and deed under consideration.
 

 The construction given the word by the trial court and the Court of Appeals in our judgment was correct.
 

 The chief question in the case is: What was the proper measure of damages for the breach of the contract?
 

 Plaintiff in error claims the measure of damages at most should be the difference in the rental value of the property for the nine-month period the May-Stern lease was to run. This lease was for $225 a month. The Stone lease was for $450, making, as plaintiff in error claims, $225 per month for nine months the true measure of damages, one-half of which was to be borne by each party to the deed.
 

 Defendant in error claims the parties fixed the measure of damages in the contract itself; that the
 
 *24
 
 special circumstances affecting the contract were known to both parties; 'and that they fixed the amount for which each party was to be liable in the securing of possession of the premises from the May-Stern Company.
 

 Under the rule of
 
 Hadley
 
 v.
 
 Baxendale,
 
 9 Exch., 341, in the event of breach, the damages should be: (1) Such as may reasonably be supposed to have been in contemplation of both parties as the probable result of the breach; or (2) such damages as flow naturally from the breach. We think the parties contemplated the termination of the May-Stern lease before the expiration of the nine-month period upon the best terms consistent with the covenant in the deed for quiet enjoyment, which meant that the surrender of the property should be voluntary by the May-Stern Company, upon terms acceptable and agreeable to them, and that such damages flowed naturally from the breach of the contract. However, the breach being the nonpayment of one-half of the “amount incurred in securing the possession of said premises,” was not the measure fixed by the parties themselves? We think it was.
 

 It is very unusual for parties to a contract involving negotiations with persons who are not parties to the contract to leave such negotiations entirely under the control of one of the parties, and ordinarily such a contract is easily subject to abuses of the party having such unlimited latitude. There was, however, one check upon possible extravagance, and that was that each party was equally interested in keeping the expense as low as possible. The trial court charged the jury that if it found for
 
 *25
 
 the plaintiff, it might recover one-half of the total snm so reasonably expended by it in procuring cancellation of the lease and obtaining possession of the premises prior to the expiration of the term of the lease, which had nine months yet to run. The effect of this instruction to the jury was to submit for its determination whether it was reasonably necessary to pay the sum of money so paid in order to recover possession. The jury determined that it was necessary. There is no element of fraud or bad faith in this transaction. The work of erecting the public building had already begun. It had reached the point where the possession of the property in question was necessary. To have waited nine months for this lease to expire would have delayed the entire work for that length of time. All these facts being within the contemplation of the parties, it was not a question to determine what would be a reasonable sum to compensate the May-Stern Company, but rather a question to determine what was the least reasonable sum which would induce the May-Stern Company to cancel the lease and vacate the premises. There is not one iota of evidence in this record to indicate that it could have been so induced for a less sum than the amount awarded as damages in this case. We are compelled to find the contract to have been correctly construed by the courts below, and the measure of damages provided in the contract to have been applied.
 

 It follows that the judgment of the Court of Ap-« peals must be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Jones, Matthias, Day and Allen, JJ., concur.